**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **18-mj-066 (DAR)** |
| | : | |
| **STEVEN CARMONA** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM IN AID OF SENTENCING**

Defendant Steven Carmona, through counsel, respectfully submits the following Memorandum in aid of his sentencing.

On January 9, 2019, Mr. Carmona will appear before this Court to be sentenced pursuant to his guilty plea to the misdemeanor offense of assault on a federal officer, in violation of 18 U.S.C. § 115(b)(1)(B)(i). Based on all the sentencing factors in this case, Mr. Carmona submits that a sentence of probation is warranted. Due to such factors as the nature and circumstances of the offense, Mr. Carmona's background, his acceptance of responsibility, and the relevant sentencing factors pursuant to 18 U.S.C. § 3553(a), a sentence of probation is fair and reasonable.

**DISCUSSION**

**I.    THE POST-*BOOKER* SENTENCING FRAMEWORK.**

Under Justice Breyer's majority opinion in *Booker*, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing.

*See* 18 U.S.C. § 3553(a)(4)." *United States v. Booker*, 125 S.Ct. 738 (2005). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in *Booker* held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Pursuant to *Booker*, therefore, courts must treat the Guidelines as one, among several, sentencing factor.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a) – which were explicitly endorsed by the Supreme Court in *Booker* – sentencing courts should consider the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the *Booker* majority:

> No limitation shall be placed on the information concerning the background, character,

2

and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

[t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of *Booker*, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. After *Booker*, courts need not justify sentences outside the guideline range by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may exercise their discretion in individual cases and impose sentences which are not within the proposed guideline range.

Since *Booker*, the Supreme Court reaffirmed that the Sentencing Guidelines are merely one factor to be considered by district courts when fashioning a reasonable sentence and that the Sentencing Guidelines are not to be weighed more heavily than other sentencing factors. *See Rita v. United States*, 127 S.Ct. 2456 (2007) and *Gall v. United States*, 128 S.Ct. 586 (2007). A sentencing court shall not simply presume that a sentence within the Guideline range is automatically reasonable or that a sentence within the Guideline range is more reasonable than a sentence outside of the Guideline range. *Id.*. The sentencing court further shall not presume that a sentence outside of the Guidelines range is unreasonable. *Id.*. By considering the Sentencing Guidelines along with all of the factors set forth 18 U.S.C. § 3553(a), "the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure." *Rita* at 2465. It is critical for sentencing courts to consider all sentencing

factors and to not give undue weight to the Sentencing Guidelines because, as the Supreme Court recently reemphasized, '[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.' *Gall* at 598 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)).

## II.     STATUTORY PENALTIES

The maximum statutory penalty in the instant case is one year imprisonment. No mandatory minimum penalty applies. Thus, Mr. Carmona's request for a sentence of probation is permitted by statute.

## III.    SENTENCING GUIDELINES

As set forth in the plea agreement, Mr. Carmona's offense level is 10. *See* ECF Document 22 at 2-3. Considering that, with the exception of minor traffic infractions, Mr. Carmona has never previously been convicted of a crime, he has zero criminal history points and he is in criminal history category I. *Id*. at 3. Accordingly, Mr. Carmona's sentencing guideline range is 6 to 12 months. *Id.*.[1]

## IV.     18 U.S.C. § 3553(a)

---

[1] This guideline range falls within Zone B on the guideline sentencing table. A guideline compliant sentence in this zone includes the option to substitute imprisonment entirely by imposing a period of probation "that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment." U.S.S.G. § 5C1.1(c)(3). A guideline compliant sentence for Zone B also includes "a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention . . . provided that at least one month is satisfied by imprisonment." U.S.S.G. § 5C1.1(c)(2).

In accordance with 18 U.S.C. 3553(a)(1), courts are to consider "the nature and circumstances of the offense and the history and characteristics of the defendant" when imposing sentence. When considering these factors, a sentence of probation is warranted in Mr. Carmona's case.

There are two critical facts about the nature and circumstances of the offense that support Mr. Carmona's request for a probationary sentence. First, at the time Mr. Carmona committed the offense, his judgment was significantly impaired due to a mental illness. Second, Mr. Carmona's conduct in relation to the instant offense is an aberration.

Mr. Carmona's behavior at the time of his arrest and during the approximate two week period following his arrest indicate that he was suffering from a mental illness around the time of the instant offense. According to the government, while Mr. Carmona was being placed under arrest, he "asked 'where is the President?'" and he "stated to officers 'just end it, just kill me.'" *See* United States' Motion for Competency Examination and Hearing and for Exclusion of Time (ECF Document 10) at 2.

Additionally, at Mr. Carmona's initial court appearance on July 2, 2018, based on his behavior since the time of his June 30, 2018, arrest, the government requested a forensic screening to assess Mr. Carmona's competency. This court granted the government's request and Mr. Carmona voluntarily reported for an evaluation on July 5, 2018, at the Pretrial and Assessment office located in D.C. Superior Court. The clinical psychologist who evaluated Mr. Carmona on July 5 reported that he engaged in odd behavior and the examiner raised concerns about Mr. Carmona's thought process. *See* Dr. Sarah E. Ryan's July 6, 2018, letter to the Court (ECF Document 5). The examiner ultimately concluded that Mr. Carmona was not competent to stand trial at the time. *Id.*.

Mr. Carmona next appeared in court on July 25, 2018. At the July 25 hearing, Mr. Carmona's counsel informed the Court that Mr. Carmona's mental health significantly improved during the past two to three weeks. Mr. Carmona's counsel raised concerns at the hearing that the findings and opinions contained in Dr. Ryan's July 6 letter did not accurately describe Mr. Carmona's condition on July 25. Due to this concern, this Court granted Mr. Carmona's motion for an updated forensic screening.

The second forensic screening occurred on July 30, 2018, and Dr. Ryan noted significant changes in Mr. Carmona's behavior and mental condition. *See* Dr. Sarah E. Ryan's July 31, 2018, letter to the Court (ECF Document 14). He no longer engaged in unusual behavior, and Dr. Ryan had little, if any, concern about his thought process. *Id.*. Based on the July 30 evaluation, Dr. Ryan found Mr. Carmona competent to stand trial. *Id.*. At a hearing on August 1, 2018, the parties agreed with Dr. Ryan's conclusion concerning competency.

During the entire five month period since Dr. Ryan's July 30 evaluation, there have been no incidents of Mr. Carmona behaving oddly, exhibiting poor judgment, or engaging in any misconduct. All status reports submitted by the Pretrial Services Agency concerning Mr. Carmona's compliance with his supervision conditions since the instant case has been pending reveal that Mr. Carmona has consistently reported as required, has remained in the Washington, D.C., area, has fully complied with the court's stay away orders, and has not been rearrested for any reason.[2] Moreover, the PSR writer notes that Mr. Carmona "has complied with all Court ordered conditions of release." PSR at 5.

---

[2] *See* status reports dated July 23, 2018 (ECF Document 6), August 1, 2018 (ECF Document 15), September 6, 2018 (ECF Document 17), October 12, 2018 (ECF Document 19), and October 26, 2018 (ECF Document 21).

When considering Mr. Carmona's criminal history[3] prior to the instant offense along with his quick recovery and overall conduct subsequent to his arrest, his behavior in the instant case was clearly aberrational.  The aberrational nature of his conduct provides strong support for a sentence of probation.

Mr. Carmona's very limited criminal record and his favorable conduct since his June 30, 2018, arrest indicate that his history and characteristics offer further support for a sentence of probation.  Mr. Carmona's educational and employment history provide additional support for a probationary sentence based on his history and characteristics.  Mr. Carmona obtained his GED through a community college in Montgomery County, Maryland.  He also earned a Department of Transportation license for driving commercial vehicles.  Although Mr. Carmona is only twenty one years of age, he has considerable employment history.  Mr. Carmona's first two jobs were at Dunkin Donuts and Walmart.  At about age eighteen, he secured employment doing telephone sales through Metro PCS.  The next year, Mr. Carmona worked as a manager and "final inspector" for U-Haul.  Mr. Carmona is currently employed as a carpet cleaning technician assistant in the state of Maryland.

When considering additional § 3553(a) factors, such as deterrence, community protection, providing Mr. Carmona with needed medical care, and "the kinds of sentences available," it is clear that a sentence involving any additional incarceration is unwarranted.  Mr. Carmona's overall criminal history and his compliance with release conditions in the instant case show that a sentence involving any additional incarceration for deterrence or community safety purposes will be ineffective and unnecessary.  Incarcerating Mr. Carmona at this point will cause him severe stress and may cause the mental health problems that were present at the time of his

---

[3] With the exception of some traffic related matters, Mr. Carmona has never previously been convicted of a crime.

arrest to recur. In order to provide the best care for Mr. Carmona's mental health, he must remain in the community and continue with his current lifestyle.

## **CONCLUSION**

For the reasons discussed above, sentencing Mr. Carmona to a period of probation is reasonable and appropriate. Considering that Mr. Carmona's offense is a misdemeanor and that he has done very well on pretrial supervision, the period of probation should not exceed two years. A probationary sentence will sufficiently addresses Mr. Carmona's conduct as well as other important factors pursuant to 18 U.S.C. § 3553(a). Any sentence that requires Mr. Carmona to serve any additional period of incarceration will impermissibly impose upon him a sentence greater than necessary.[4] Accordingly, Mr. Carmona respectfully requests that the Court impose a sentence of probation.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
TONY W. MILES
Assistant Federal Public Defenders
625 Indiana Avenue, N.W.
Washington, D.C.  20004
(202) 208-7500

---

[4] When imposing sentence, the Court's sentence shall be "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a).