## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 18-MJ-00066 (DAR)** |
| **v.** | : | |
| | : | **Sentencing January 9, 2019** |
| | : | |
| **STEVEN CARMONA** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

On October 30, 2018, the defendant entered a guilty plea to one count of violating Title 18, United States Code, Section 115(b)(1)(B)(i) (Assault on a Federal Officer). For the reasons stated herein, the government asks this Court to impose a sentence that incudes mental health treatment, substance abuse treatment, and vocational training.

### PROCEDURAL BACKGROUND

The United States Secret Service (USSS) arrested the defendant on or about June 30, 2018. The USSS transported the defendant to the Comprehensive Psychiatric Emergency Program based on the defendant's suicidal ideations during his arrest. On or about July 5, 2018, this Court ordered an examination of the defendant to assess his competency to stand trial. On July 6, 2018, the Department of Behavioral Health ("DBH") opined that the defendant was not competent to stand trial. This opinion was based in part on the defendant's irritable mood, odd behavior, unusual statements, and distractibility.

On July 26, 2018, this Court ordered an additional competency screening of the defendant after the defendant's attorney observed improvements in the defendant's mental state. On July 31,

2018, DBH deemed the defendant competent to stand trial, despite the fact that he had not received any medication or mental health treatment.

Following the defendant's arrest, the defendant was tested for the use of controlled substances including cocaine, amphetamines, phencyclidine, opiates, and heroin, and no drug use was detected. The defendant was not tested for marijuana use. On December 4, 2018, while on release pending sentencing, the defendant tested positive for the use of marijuana.

Prior to entering his plea of guilty, the defendant agreed to the following factual proffer:

1.      On Saturday, June 30, 2018, at approximately 3:23 p.m., STEVEN CARMONA (hereinafter CARMONA or "defendant ") assaulted United States Secret Service ("USSS") Officer Tyler Young, a Federal law enforcement officer, in the 1600 block of Pennsylvania Avenue, N.W., Washington, DC.

2.      On Saturday, June 30, 2018, immediately prior to the assault, USSS Officer Jacob Ritter was assigned to a fixed police post on 17th Street and Pennsylvania Avenue NW. Officer Ritter was wearing a full police uniform, including a black vest with "SECRET SERVICE" emblazoned in large silver reflective letters on the front, a Secret Service star badge, a white shirt with a USSS seal clearly visible on the left shoulder, and a belt with a USSS shield badge. CARMONA parked a gray BMW330i that he was driving in the crosswalk immediately in front of Officer Ritter's post. This area has multiple signs stating that only authorized vehicles are permitted there.

3.      CARMONA exited his vehicle. Officer Ritter immediately exited his post and verbally informed CARMONA that he could not park there. CARMONA did not respond, and he began walking eastbound on Pennsylvania Avenue in the direction of the White House.

4.      Officer Ritter again told CARMONA that he could not park in the crosswalk and ordered CARMONA to move his vehicle. CARMONA asked Officer Ritter why he was stopping him, and Officer Ritter repeated that he could not park in the crosswalk.

5.      CARMONA  walked away from Officer Ritter towards a wall of bike racks. CARMONA picked up the bike rack and began to separate it in order to walk through it.

6.      Officer Ritter approached CARMONA. CARMONA stiffened his body, and bladed his body. Officer Ritter grabbed CARMONA's arm. CARMONA became combative and attempted to fight Officer Ritter off.

7.      Officer Young, also in full police uniform bearing identical markers to those described above, approached to assist Officer Ritter. Together, the two officers placed CARMONA on the ground. While on the ground, CARMONA, using a closed fist, hit Officer Young in the jaw and squarely above his left eye.

8.      CARMONA was placed under arrest for assaulting a Federal law enforcement officer. Officer Young was transported to the hospital by ambulance.

## ARGUMENT

### STATUTORY PENALTIES

Pursuant to 18 U.S.C. § 115(b)(1)(B)(i), the defendant faces a maximum term of not more than one year of imprisonment. Because this violation is a class A misdemeanor, the Court may sentence the defendant to a period of supervised release of up to one year pursuant to 18 U.S.C. § 3583(b)(3), or a period of probation of up to five years pursuant to 18 U.S.C. § 3561(c)(2).

### GUIDELINES CALCULATIONS

"As a matter of administration and to secure nationwide consistency, the Sentencing Guidelines should be the starting point and the initial benchmark" for determining the defendant's sentence. *Gall v. United States,* 128 S.Ct. 586, 596 (2007).   While, to be sure, "[i]n accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," *Kimbrough v. United States*, 128 S.Ct. 558, 564 (2007), it remains the case that "the Commission fills an important institutional role:  It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise,'" *id.* at 574 (quoting *United States v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)).  The Supreme Court "accordingly recognized that, in the ordinary case, the Commission's recommendation of a

sentencing range will 'reflect a rough approximation of sentences that might achieve §3553(a)'s objectives.'" *Kimbrough*, 128 S.Ct. at 562-63 (quoting *Rita v. United States*, 127 S.Ct. 2456, 2465 (2007)).

There is not dispute that the defendant has a criminal history score of zero, placing him in criminal history category I.

The Probation Office has determined that the defendant's guideline offense level is 13.  As noted in the Presentence Report ("PSR"), this differs from the text of the plea agreement that includes a calculation of 10. The difference arises from the calculation of the base offense level. In the plea agreement, the parties focused on the charged offense of misdemeanor assault pursuant to 18 U.S.C. §115(b)(1)(B)(i) that does not include as an element physical contact with a federal officer. Thus, the text of the plea agreement included a four-point base offense level pursuant to U.S.S.G. § 2A2.3(a)(2). However, the pretrial report writer focused on the relevant conduct which included physical contact with the officer, resulting in a base offense level in the PSR of seven, not four, pursuant to  U.S.S.G. § 2A2.3(a)(1).  See U.S.S.G. § 1B1.3, application note 2 ("Where there is more than one base offense level within a particular guideline, the determination of the applicable base offense level is treated in the same manner as a determination of a specific offense characteristic. Accordingly, the 'relevant conduct' criteria of 1.B1.3 are to be used . . ."). The presentence report writer's additional calculations are consistent with the plea agreement, including two additional levels for causing bodily injury pursuant to U.S.S.G. § 2A2.3(b)(1)(A); six additional levels for an assault on an official victim pursuant to U.S.S.G. § 3A1.2(b); and a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.

Accordingly, the estimated guideline range contained in the text of the plea agreement is 6-12 months, while the guideline range calculated in the PSR is 12 months (12-18 months capped

by the statutory maximum sentence of 12 months). Thus, the guideline range in the PSR is no greater than the upper guideline range in the estimate contained in the plea agreement. However, the greater guideline calculation places the defendant's guideline range within Zone C, which calls for a split sentence, rather than Zone B, which provides broader access to alternatives to imprisonment. See U.S.S.G. §5C1.1. While the government believes that a 12-month sentence is appropriate, the government defers to the court regarding how that sentence should be served.[1]

Pursuant to U.S.S.G. § 5D1.2(a)(3), because the defendant entered a guilty plea to a class A misdemeanor, the guideline range for a period of supervised release is up to one year.[2]

## SENTENCING FACTORS

During any period of probation, supervised release, or imprisonment, the following concerns should be addressed:

1. No assaultive, threatening, or intimidating behavior and/or communications;
2. No violations of local, state, or Federal law;
3. No alcohol or drug possession or use, excluding prescribed medications;
4. Defendant shall participate in all mental health counseling or treatment recommended by the United States Probation Office ("USP");
5. Defendant shall participate in all substance abuse counseling or treatment recommended by USP;
6. The defendant shall participate in any educational and vocational programs identified by USP;
7. The defendant shall seek and maintain employment;
8. The defendant shall stay away from the White House complex and grounds as defined by the attached map (Attachment 1);
9. The defendant shall timely make all court-imposed restitution payments.

---

[1] The government also notes that the plea offer states that "[y]our client understands that the sentence in this case will be determined by the Court, pursuant to the factors set forth in 18 U.S.C. § 3553(a), including a consideration of the Sentencing Guidelines."

[2] If the defendant's guideline sentence falls within Zone C, he is not eligible for probation under the guidelines pursuant to U.S.S.G. § 5B1.1(b).

Pursuant to 18 U.S.C. § 3582(a), in determining whether to impose a period of imprisonment, the Court shall consider any applicable provisions of § 3553(a), "recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." Pursuant to 18 U.S.C. § 3583(c), the Court shall consider the factors enumerated in 18 U.S.C. §§ 3553 (a)(1), (a)(2)(B)-(D), and (a)(4)-(a)(7) when determining whether to impose a period of supervised release, and if so, the duration and conditions of release.

### 18 U.S.C. §§ 3553 (a)(1) – The Nature and Circumstances of the Offense and Characteristics of the Defendant

The defendant pled guilty to assaulting a federal officer. This particular assault was avoidable and unprovoked. The officer who made initial contact with the defendant gave the defendant several verbal commands that the defendant ignored before he crossed a clearly marked barrier and continued to ignore the officer's commands. While the officers initiated the physical contact with the defendant, the defendant violently resisted, and in doing so deliberately punched Officer Young in the face.

The defendant's personal characteristics support a maximum period of supervised release. The defendant's bizarre behavior at the time of his arrest, and during his initial forensic screening while he was on release, remain undiagnosed. However, in his objection to the draft PSR, defense counsel notes that at the time of the offense the defendant was "suffering from emotional/mental health issues." Further, on December 4, 2018, the defendant tested positive for marijuana, despite his claim that he had stopped smoking marijuana at the age of 17. Thus, it appears that at the time the defendant committed this offense, he was suffering from either a mental health issue or substance abuse issue, or a combination of these two conditions.

**18 U.S.C. §§ 3553 (a)(2)(B) – Adequate Deterrence to Criminal Conduct**

Although the defendant's decision to use marijuana while on release pending sentencing is a cause for concern, the government is unaware of any additional acts of violence committed by the defendant while he has been on release and under supervision in this case. Thus, it appears that court-imposed structure has been effective in deterring the defendant from engaging in additional criminal conduct.

**18 U.S.C. §§ 3553 (a)(2)(C) – Protect the Public from Further Crimes of the Defendant**

For the reasons noted above, continued structure through a maximum period of supervised release will protect the public from further criminal actions by the defendant. The absence of any significant criminal conduct while the defendant has been on pretrial release indicates that the maximum period of supervised release will continue to minimize the threat the defendant poses to the public.

**18 U.S.C. §§ 3553 (a)(2)(D) – To Provide the defendant with Needed Educational or Vocational Training, or Medical Care**

The maximum period of supervised release will provide structure for the defendant to receive mental health and/or substance abuse treatment and counseling, and to obtain vocational training. The PSR indicates that the defendant has been unable to maintain stable employment, and may not have a GED. The defendant does appear to have some interest in employment based on his existing work history. A period of supervised release with the conditions proposed by the government will provide the defendant with the necessary structure and incentive to move toward an independent and productive life.

**18 U.S.C. §§ 3553 (a)(4) – (a)(7) – Consideration of Established Sentencing Ranges, Pertinent Policy Statements, Avoiding Sentencing Disparities, and the Need for Restitution**

The specific conditions suggested by the government align with the mandatory and discretionary conditions of release established by U.S.S.G. § 5D1.3, and are consistent with the policy statements contained in § 5D1.3(c) and (d) regarding standard and special conditions of supervised release, in particular the special conditions for mental health and substance abuse treatment contained in §§ 5D1.3(d)(4) and (5).

Pursuant to 18 U.S.C. §§ 3553 (a)(7), a maximum period of supervised release, including vocational and educational training, would also help the defendant to meet any obligations for restitution to the victim in this case.

## CONCLUSION

For the aforementioned reasons, and ant others presented at the sentencing hearing, the United States respectfully asks that any sentence imposed by this Court should address the mental health, substance abuse, and vocational issues addressed in this memorandum.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar No. 472845

By:      /s/            .
JOHN CUMMINGS
Assistant United States Attorney
Bar No. 986573
555 Fourth Street, N.W., Room [NUMBER]
Washington, DC 20530
John,cummings@usdoj.gov
(202) 252-7271